UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


METROPOLITAN LIFE INSURANCE COMPANY          CIVIL ACTION

v.                                           NO. 15-362

LYNDA TORRY SCOTT, ET AL.                     SECTION "F"


ORDER AND REASONS

Before the Court is a second motion for summary judgment filed by Terrell McMaster.  For the reasons the follow, the motion is DENIED.

**Background**

This civil interpleader action calls on the Court to determine whether a widow murdered her husband without justification such that she is disqualified from receiving his life insurance proceeds.

On October 13, 2012, Cornelius Scott was killed by a "lethal stab wound to the chest."  Mr. Scott is survived by his widow, Lydia Torry Scott, and his son, Terrell McMaster.  Before his death, Mr. Scott worked for Laitram, L.L.C., an ERISA-regulated employee welfare benefit plan sponsored by Laitram and funded by group life insurance policies issued by Metropolitan Life Insurance Company.  At the time of his death, Mr. Scott was enrolled under the Plan for life insurance and accidental death and dismemberment

1

coverage totaling $482,000.00.

The latest beneficiary designation on file with the Plan for Mr. Scott names Mrs. Scott as the sole primary beneficiary of the life insurance benefits, and Mrs. Scott initiated the application process to claim the Plan benefits. However, Mrs. Scott has not been ruled out as a suspect in Mr. Scott's death. Unable to determine the proper beneficiary or beneficiaries of the group life insurance policy it issued and administers as claim fiduciary for Laitram, MetLife filed a complaint in interpleader in this Court on February 5, 2015. MetLife cannot determine whether a court would find that Mrs. Scott is disqualified from receiving the Plan benefits based on federal common law and state laws that preclude an individual from receiving funds if that person is convicted in the death of the insured. If Mrs. Scott is disqualified, then the Plan benefits are payable to Mr. McMaster under the Plan's facility of payment provision. Accordingly, MetLife filed this interpleader action as a mere stakeholder that is ready, willing, and able to pay the Plan benefits to whomever the Court determines benefits should be paid. The Court granted MetLife's motion to deposit funds into the Court's registry on February 11, 2015.

On May 18, 2015, Mr. McMaster, pro se, requested summary relief in his favor and against Mrs. Scott; he avers that Mrs. Scott is precluded from receiving his father's benefits because she murdered him. No opposition to Mr. McMaster's motion was filed.

2

On June 3, 2015, the Court denied the motion, without prejudice, as premature.  In so doing, the Court noted generally that, under the so-called Slayer Rule invoked by Mr. McMaster, "conviction triggers forfeiture."  The Court noted that "Mr. McMaster may re-file a motion for summary judgment that can be supported by additional factual evidence, such as proof of conviction, or if he can direct the Court to binding or persuasive case law that holds that one suspected [as opposed to convicted] of murder is disqualified from receiving the decedent's benefits."  Mr. McMaster now seeks summary relief for a second time.  Again, no response or opposition papers have been filed.[1]

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law.  No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio., 475 U.S. 574, 586 (1986).  A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

---

[1] This is so despite the fact that the Court issued an order continuing the submission date on Mr. McMaster's motion to allow additional time for submission of opposition papers.

3

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. Id. at 249-50 (citations omitted). Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2). "[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)(internal quotation marks and citation omitted). In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007). Although the Court must

4

"resolve factual controversies in favor of the nonmoving party," it must do so "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013)(internal quotation marks and citation omitted).

## II.

For a second time, Mr. McMaster seeks summary relief in his favor.  Entering judgment in Mr. McMaster's favor, on the civil question of a beneficiary's right to property, requires a finding that Mr. Scott's widow is disqualified from claiming the plan benefits, thereby entitling Mr. McMaster to recover his father's plan benefits under the facility of payment provision.   To determine as a matter of law that Mrs. Scott is disqualified as beneficiary, the Court must find, by a preponderance of the evidence, that she participated in the intentional, unjustified killing of her husband, Mr. Scott.   On this record, the Court cannot make such a finding without indulging some speculation. Accordingly, whether or not Mrs. Scott participated in the intentional, unjustified killing of her husband remains a triable issue.

"[A] murdering heir is not entitled to receive property as a result of the killing."  See Egelhoff v. ex rel. Egelhoff Breiner, 532 U.S. 141 (2001)(acknowledging in dicta that states have

fashioned so-called slayer statutes). Consistent with this principle, a murderous beneficiary is generally barred from recovering insurance proceeds: at federal common law, and as codified by most states, one who willfully causes the death of an insured is ineligible to collect life insurance proceeds as a beneficiary. Metropolitan Life Ins. Co. v. White, 972 F.2d 122, 124 (5th Cir. 1992).

Endorsing this principle, Louisiana forbids a beneficiary from receiving insurance benefits when the beneficiary's intentional acts caused the benefits to accrue. Specifically, La.R.S. 22:901D provides:

(1) No beneficiary, assignee, or other payee under any personal insurance contract shall receive from the insurer any benefits under the contract accruing upon the death, disablement, or injury of the individual insured when the beneficiary, assignee, or other payee is either:

  (a) Held by a final judgment of a court of competent jurisdiction to be criminally responsible for the death, disablement, or injury of the individual insured.

  (b) Judicially determined to have participated in the intentional, unjustified killing of the individual insured.

(2) Where such a disqualification exists, the policy proceeds shall be payable to the secondary or contingent beneficiary, unless similarly disqualified. . . . Nothing contained in this Section shall prohibit payment pursuant to an assignment of the policy proceeds where such payment defrays the cost and expenses of the insured's funeral or expense incurred in connection with medical treatment of the insured. Nothing contained in this Section shall prohibit payment of insurance proceeds pursuant to a facility of payment clause, so long as such payment is not made to a beneficiary, assignee, or other payee disqualified by this Section.

6

Notably, by its express terms, a criminal conviction is not the predicate disqualification.  See <u>California-Western States Life Ins. Co. v. Sanford</u>, 515 F. Supp. 524, 527 (E.D.La. 1981)(Sear, J.)(construing predecessor statute and noting that the word "conviction" was not chosen by the legislature).  Indeed, neither a criminal conviction nor its absence is conclusive on the issue of criminal liability.  <u>Id.</u> (citing cases).  Mindful that a finding by this Court that Mrs. Scott intentionally and without justification took Mr. Scott's life would constitute the requisite judicial determination necessary to preclude Mrs. Scott from recovering her late husband's life insurance benefits, the Court turns to consider the summary judgment evidence.

The summary judgment record consists of what purports to be a Kenner Police Department report dated October 14, 2012, as well as Mr. Scott's death certificate, which states that Mr. Scott's manner of death was "homicide"; that Mr. Scott's cause of death was by "lethal stab wound to the chest"; and finally describes that Mr. Scott was "stabbed by another person."  The record also indicates that MetLife has reached out to the Kenner Police Department on numerous occasions in an attempt to determine whether Mrs. Scott had been ruled out as a suspect, or otherwise obtain additional information about the status of the investigation into Mr. Scott's death.  Apparently to no avail.  All that MetLife has ostensibly discovered is that Mrs. Scott had not yet been ruled out as a

suspect in her husband's death.

Whether or not competent summary judgment evidence, the 10/14/12 police report contains this narrative:

> On 10-13-12 at 1838 hours, I, Officer Brian Saucier, was dispatched to 2208 Idaho Apt. C in reference to a call for service regarding a subject that had collapsed, and was possibly not breathing. Upon arrival on scene at 1842 hours, I was meet [sic] by Lynda Scott, and entered the apartment.
> I located the subject, Cornelius Scott, on the sofa in the front living room of the residence. I assessed Cornelius Scott's condition. He did not have a pulse nor was he breathing. He had a laceration on the left side of his chest just below the nipple the laceration was approximately 1 inch long, but did not have any blood flowing from it or around it. As I prepared to begin CPR, KFD Unit E385 arrived on scene at 1844 hours, and began C.P.R. at 1845 hours. I notified headquarters that C.P.R. was in progress. EJ EMS arrived on scene at 1849 hours, and treatment of Cornelius Scott was relinquished to them.
> Lynda Scott advised that she heard a crashing sound from the kitchen, and found Cornelius Scott, 58, laying on the floor. He appeared to have fallen onto the glass table in the room, which caused it to tip over. All of the items on the table fell to the ground including a lamp, and a vase. The vase and lamp shattered leaving pieces of broken glass on the floor. It was believed that Cornelius Scott landed on a piece of glass which caused the laceration on his chest. While speaking with Lynda Scott, she began to have a seizure, and I was unable to acquire any further information.
> Cornelius Scott was transported to Oschner Hospital.... He was treated [but] pronounced dead at 1934 hours.... Medical records showed he was being treated for high blood pressure at this time.
> At 1954 hours, hospital staff contacted the Jefferson Parish Coroner's Office investigator Tommy Evans, advised them to hold the body pending further investigation.
> —Case Suspended.

That his father's death was ruled a homicide coupled with the fact that the police report appears to suggest that Mr. and Mrs. Scott

8

were the only two people in the house at the time of the homicide -- Mr. McMaster submits -- compels the finding that Mrs. Scott killed Mr. Scott.  But this alone is insufficient for the Court to enter judgment as a matter of law that Mrs. Scott intentionally and without justification killed Mr. Scott.  Absent from the record is any final judgment that Mrs. Scott is criminally responsible for her husband's death.[2]  Of course, applying Louisiana law, it is not necessary that the beneficiary of an insurance policy be convicted of the insured's homicide in order to be disqualified from recovering benefits; rather, this Court may make its own inquiry into the circumstances surrounding Mr. Scott's death and even may ultimately find that Mrs. Scott participated in the intentional, unjustified killing of Mr. Scott.  But it may not do so on this record.[3]

Accordingly, Mr. McMaster's motion for summary judgment is

---

[2] In fact, although there is some evidence that Mrs. Scott has not been ruled out as a suspect, it seems that she has not been charged with Mr. Scott's murder.  The status of the Kenner Police Department's years-old investigation is unknown.

[3] Cf. American Armed Forces Mut. Aid Ass'n v. Cra[w]ford, No. 13-2765, 2015 WL 338980, at *1-2 (W.D.La. Jan. 26, 2015)(denying motion for summary judgment by one beneficiary who was not responsible for a decedent's death even though the other beneficiary had been charged with manslaughter and had entered a plea of nolo contendere; the plea of nolo contendere was inadmissible as evidence under Rule 410 of the Federal Rules of Evidence).

DENIED.[4]

New Orleans, Louisiana, September 2, 2015

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

[4] Mrs. Scott has not responded to Mr. McMaster's motion and she apparently failed to participate in the scheduling conference originally set for August 20, 2015. If Mrs. Scott again fails to participate in the September 17, 2015 scheduling conference, the Court will consider the implications of her failure to participate in this case, in particular, whether or not it signals a failure by her to complete her claim to the plan benefits. Finally, the Court notes that it appears that neither Mrs. Scott nor Mr. McMaster are represented by counsel. The Court urges both that counsel would be of great assistance to them and to the Court when this case goes to trial.